Marshall, C. J.
This proceeding involves the construction and application of Section 710-3 of the General Code of Ohio and challenges its constitutionality. That portion of the section calling for interpretation is as follows:
“The use of the word ‘bank/ ‘banker/ or ‘banking/ or ‘trust’ or words of similar meaning in any foreign language, as a designation or name, or part of a designation or name, under which business is or may be conducted in this state, is restricted to banks as defined in the preceding section. All other persons, firms or corporations are prohibited from soliciting, accepting or receiving deposits, as defined in section 2 [G. C. § 710-2] of this act and from using the word ‘bank/ ‘banker,’ ‘banking/ or ‘trust/ or words of similar meaning in any foreign language, as a designation or name, or part of a designation or name, under which business may be conducted in this state. Any violation of this prohibition, after the day when this act [G. C. §§ 710-1 to 710-189] becomes effective, shall subject the party chargeable therewith, to a penalty of $100.00 for each day during which it is committed or repeated. Such penalty shall be recovered by the superintendent of banks by an action instituted for that purpose, and in addition to said penalty, such *144 .violation may be enjoined and the injunction enforced as in other cases.”
It will be seen that for a definition of the word “bank,” specific reference is made to the preceding section, being Section 710-2. The portion of said preceding section wherein the word “bank” is defined is as follows:
“The term ‘bank’ shall include any person, firm, association, or corporation soliciting, receiving or accepting money, or its equivalent, on deposit as a business, whether such deposit is made subject to check or is evidenced by a certificate of deposit, a pass-book, a note, a receipt, or other writing,” etc.
While the case has heretofore been decided upon a consideration of the sufficiency of the petition, the demurrer was in reality addressed to the answer, and, inasmuch as the demurrer searches the entire record, the petition and answer should both be looked to with a view of determining their sufficiency.
The answer contains three separate defenses, none of which contains a general denial. We are not concerned with the denials contained in the first defense, because the demurrer admits the truth of the allegations of the petition.
The second and third defenses allege that in its printed advertising matter and business stationery the word “incorporated” does not immediately follow the business title of “Otis & Co.,” and, further, that Otis & Co. has been, and. is, investing portions of its funds otherwise than in those securities permissible to banks of deposit. Those defenses are unimportant in this controversy, unless it is claimed *145 that Otis & Co. is in fact a bank. It cannot, however, be seriously claimed under the allegations of the petition that Otis. & Co. is a bank, as measured by the definition in Section 710-2. Neither is it claimed by counsel in argument that it is a bank, or that it is entitled to use the word “banker” as a part of its name. The contention of counsel for plaintiff is that the term “investment bankers” is not used as a part of its name, or even as a part of a designation under which business is conducted by it in this state.
The case then must turn upon the sufficiency of the allegations of the petition and whether the well-pleaded allegations state a cause of action. We have not considered the question of the right of plaintiff to maintain an action against his partners, or the partnership of which he is a member, because this question has not been put in issue, and we recognize the importance of the controversy and commend the course of the Superintendent of Banks in meeting the issue without resorting to technical impediments.
Before beginning a discussion of the proper construction of the statute we think it will be. beneficial to define the status of banks and banking in the state of Ohio. Section 710-3, General Code, is a part of the new banking code recently adopted by the general assembly, and this section should be construed in the light and spirit of the entire chapter. Before the adoption of the banking code there were more than two hundred and seventy-five sections of the statute for the regulation of banks and banking, and *146 nearly two hundred and fifty of these were repealed, the provisions of which, were, for the most part, carried into the new code. There are also many sections of the criminal code designed to regulate banks and banking and to prevent and punish offenses in relation thereto. We will not attempt to enumerate, even in a general way, all of the provisions of the code which are designed to throw certain protections around the institutions and persons having dealings with them, but it will be found that banks are under strict public supervision and regulation, and that they are compelled to render statements of their financial condition and publish the same from time to time, and otherwise give the utmost publicity to their affairs. Limitations are placed upon the loans which may be made to one person or firm, and restrictions are made as to the amount which may be loaned upon real estate and in regard to the securities in which the capital and deposits of banks may be invested. They are required at all times to maintain a reserve of fifteen per cent, of deposits; requirements are made as to the minimum capital to be employed. If the bank is a corporation, its directors are responsible for losses due to negligent management or to a violation of any of the statutes governing the management of banking institutions; its stockholders are responsible to depositors in the event of insolvency in an amount equal to the face value of the stock held by them.
In addition to the statutory requirements, banking institutions voluntarily do many things to safeguard the depositors and go to large expense in con *147 structing vaults and locks, and experience has shown that banks employ trustworthy men of high integrity to look after their affairs; men who are competent to give advice to prospective investors.
By reason of such regulations and supervision, and by reason of the careful methods voluntarily followed by banking institutions, the public have learned to place their confidence in banks, and justly so. Only recently the general assembly provided that a slander or libel uttered against a bank is a felony and subject to severe penalties.
It will be seen, therefore, that the use of the word “bank” or “banker” is a valuable adjunct to any business, and the protection of the provisions of the banking code should therefore be available only to those institutions which are subject to the regulations and restrictions imposed upon such institutions by the banking code.
If we are correct in this, then it is no hardship upon any person, firm or association not strictly classed as a banking institution to be denied the right to use the word “bank,” or a kindred term, as part of its name or designation. All of the foregoing defines the atmosphere which was being breathed by the general assembly in framing and adopting Section 710-3, General Code, and should therefore aid in ascertaining the legislative intent.
The statute contains severe penal and other provisions for its enforcement and it is conceded that it must be interpreted according to the rules governing the interpretation of penal statutes.
Counsel on both sides have cited former decisions of this court bearing upon the rules of construction *148 of penal statutes, to-wit: State, ex rel. Moore Oil Co., v. Dauben, Bldg. Inspector, 99 Ohio St., 406; Baker v. State, 69 Ohio St., 68, 74; Conrad, alias Castor, v. State, 75 Ohio St., 52, 69; State, ex rel. Enos, Pros. Atty., v. Stone, 92 Ohio St., 63; State, ex rel. Mitman, v. Board of County Commissioners of Greene County, 94 Ohio St,, 296. A careful reading of those cases will disclose no conflict, they are easily reconciled with each other, and it is not difficult to draw a composite rule therefrom.
Penal statutes, or those which restrain the exercise, regulate the conduct, or impose restrictions upon any lawful trade, occupation or business, should be strictly construed, and their scope should not be extended to include limitations not clearly expressed in their terms. Neither should a statute defining an offense be extended by construction to persons not included within its descriptive terms. In all other respects the general rules of construction applicable to remedial statutes have equal application to penal statutes; that is to say, they are to be fairly construed according to the expressed legislative intent without resort to verbal niceties or technicalities. There should not be any forced construction to exclude from their operation persons who are plainly within their terms; statutes designed to prevent fraud should be so construed as to prevent the evil aimed at. Strict construction does not override the requirement that words are to be given their usual and ordinary meaning and that the purpose and intention of the lawmaker should be carried into effect. It is an aid in ascertaining the *149 legislative intent to consider the existing evil which it is intended to remedy.
The foregoing rule has been stated with some particularity and at some length because in the instant case counsel entertain widely different views and the decisions of the judges of the lower courts are widely divergent.
It cannot be doubted that gross frauds are daily practiced upon the public by the sale of worthless securities. Neither can it be doubted that the improper use of the words “bank” and-“banker” can be made a valuable aid in such practices.
The question of the proper interpretation of this section turns largely upon the proper definition of the word “designation.” So far as can be ascertained this word has never received judicial definition. We therefore turn to the Century Dictionary as being the most authoritative, where we find the following:
“Specifically, an addition to a name, as a title, profession, trade, or occupation, to distinguish the person from others.”
It is contended that the word “designation” is synonymous with “name.” This view, however, seems untenable, inasmuch as both words have been used. It will be presumed that the general assembly had some purpose in mind in using both words instead of only one, and unless the words are inconsistent or contradictory it is the duty of the courts to give effect to both words.
It has been suggested that the word “designation” means “appellation,” and it is quite true that some dictionaries have so defined it. The word *150 “appellation,” however, is so nearly synonymous with the word “name” as to clearly indicate that a different definition must have been intended.
It has further been suggested that the word “designation” might properly be defined “business title.” This, however, also seems untenable, because in Section 710-82 the term “business title” is found, and it is very clear that in that section the term “business title” is synonymous with firm name.
Applying the above-quoted definition, and construing the statutes accordingly, it must be said that the words “investment bankers,” following as they do so closely after the firm name, clearly designate the business in which Otis & Co. is engaged and induces in the casual observer the belief that the firm is doing a banking business. It is of course conceded that Otis & Co. is a highly reputable and perfectly responsible firm, and yet, if new customers are attracted to it by the use of the term and the confidence inspired by it, the same result would naturally accrue to disreputable and irresponsible concerns, which might draw their victims in the belief that they are dealing with bankers under state sanction and supervision.
It is apparent that this evil was one of the objects aimed at by the general assembly in the enactment of this section, and the section would fall far short of this purpose if unscrupulous persons or concerns without financial responsibility, who are not in fact banks or bankers, are permitted to use the term “investment bankers.”
*151 As illustrations of designations which are not a part of the name or business title the following áre suggested: “John Jones, Attorney at Law,” “David Davis, Physician,” “William Williams, Certified Accountant.”
It is clear that in each of these examples there is both a name and a designation, and that they are not synonymous.
It may be conceded that there is ambiguity in the statute, calling for judicial interpretation. Very few statutes are so perfectly framed and so carefully worded as to be free from criticism when analyzed and expounded by able^ and ingenious counsel, but it is clear that the language of the statute is capable of the construction herein given and that such construction is in harmony with the legislative intent.
Having thus determined the construction of the section, it remains to ascertain whether it is constitutional.
It is contended by the plaintiff in error that it is invalid because in conflict with the 14th Amendment to the Federal Constitution and Sections 1, 16 and 19 of Article I of the Ohio Constitution.
Without quoting these provisions it is sufficient to say that they are public policy provisions of the state and federal constitutions; but these provisions are met by the police power of the state and nation, and even though the prohibition of Section 710-3 is in derogation of a common-law right it is not invalid if a reasonable regulation for the promotion of the public welfare.
*152 The action of the general assembly in the exercise of the police power is not limited, unless the public policy of the state has been declared upon that particular subject in the constitution. Statutes or common-law rights may be changed at will. The police power must of course be exercised in a reasonable manner and must not be oppressive in its operation. Neither do we think its exercise or its operation in this instance is unreasonable, burdensome or oppressive.
In the instant case the constitutional validity of this section is further upheld by the fact that the Constitution of Ohio has made declarations as to the policy of the people on this subject, which declaration will be found in Section 3, Article XIII, as follows:
“No corporation not organized under the laws of this state, or of the United States, or person, partnership or association shall use the word ‘bank/ ‘banker/ or ‘banking,’ or words of similar meaning in any foreign language, as a designation or name under which business may be conducted in this state unless such corporation, person, partnership or association shall submit to inspection, examination and regulation as may hereafter be provided by the laws of this state.”
The foregoing provision does not of course duplicate the provisions of Section 710-3, but it can well be said that the provisions of the statute are in harmony with the declared policy of the framers of the constitution.
*153 For the foregoing reasons the judgment of the court of appeals will be affirmed.

Judgment affirmed.

Johnson, Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.